# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 16-1543V
(not to be published)

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * * | |
| TINA L. ESKELIN, * | |
| * | Special Master Corcoran |
| * | |
| Petitioner, * | Filed: July 18, 2018 |
| * | |
| v. * | Decision; Attorney's Fees and Costs; |
| * | Reasonable Basis. |
| SECRETARY OF HEALTH * | |
| AND HUMAN SERVICES, * | |
| * | |
| Respondent. * | |
| * | |
| * * * * * * * * * * * * * * * * * * * * * * * * * | |

*Jeffrey S. Pop,* Jeffrey S. Pop & Associates, Beverly Hills, CA, for Petitioner.

*Voris E. Johnson*, U.S. Dep't of Justice, Washington, DC, for Respondent.

### FINAL ATTORNEY'S FEES AND COSTS DECISION[1]

On November 17, 2016, Tina Eskelin filed a petition seeking compensation under the National Vaccine Injury Compensation Program ("Vaccine Program").[2] Petitioner alleged that the Influenza ("flu") vaccine she received on November 20, 2013, caused her to develop Guillain-Barré syndrome ("GBS") and/or Chronic Inflammatory Demyelinating Polyneuropathy ("CIDP"). Petition (ECF No. 1) ("Pet.") at 1. Petitioner further alleged that a second flu vaccine and a Prevnar 13 (pneumococcal) vaccine—received almost three years later, on September 14, 2016—caused a flare-up of her CIDP. *Id.* at 2.

---

[1] Although this Decision has been formally designated "not to be published," it will nevertheless be posted on the Court of Federal Claims's website in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). **This means the Decision will be available to anyone with access to the internet**. As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the Decision in its present form will be available. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) ("Vaccine Act" or "the Act").

Following the filing of medical records and the Rule 4(c) Report in the case, and an unsuccessful attempt by Petitioner to retain an expert, the parties entered a Joint Stipulation of Dismissal on November 20, 2017 (ECF No. 17). Thereafter, I entered an Order concluding proceedings the next day (ECF No. 18).

Petitioner has now filed a motion requesting final attorney's fees and costs, dated December 19, 2017. *See generally* Final Motion for Attorney Fees and Costs ("Fees App.") (ECF No. 19). Petitioner requests reimbursement of attorney's fees and costs in the total amount of $9,402.98 (representing $8,154.50 for attorney fees, and $1,248.48 for costs). *Id.* Respondent contests the appropriateness of any fees award on reasonable basis grounds. For the reasons stated below, I hereby **GRANT IN PART** Petitioner's request for fees and costs, awarding a total of **$9,302.98** (representing $8,154.50 in attorney fees and $1,148.48 in costs).

## Fees Request

According to the billing record (submitted with the fees request), Petitioner's counsel, Mr. Jeffrey Pop, began reviewing the case file on November 10, 2016 (one week prior to filing), and immediately began requesting Petitioner's medical records. Because Petitioner received her first vaccine on November 20, 2013, counsel was under some time pressure to evaluate the merits of the claim.[3]

The record reveals that counsel began requesting records on November 17-18, 2016 (the same day the case was filed).  *See* Ex. 1 to Fees App. at 1-2 (ECF No. 19-2). From November through February 2016, counsel's billing entries indicate that his staff worked to obtain records in a timely fashion.  *See id.* at 1-3 (e.g., 11/17/2016 entry noting law clerk contacted medical facility to request records). Counsel completed only 0.6 hours of work during this time period (limited to reviewing initial documents filed in the case). *Id.* at 2. The records were eventually obtained by February 14, 2017, and filed that same day—approximately three months after the case's initiation. *Id.* at 3.[4] The billing record indicates that counsel spent 2.5 hours reviewing the records prior to filing them. *Id.* Following the filing of Petitioner's records and the Rule 4(c) Report, the remainder of counsel's billing entries suggest that he worked to obtain an expert report (in support of Petitioner's significant aggravation claim), and completed tasks relating to the same. *See id.* at 4-6 (e.g., 8/18/2017 entry noting counsel "draft[ed] timeline for expert with respect to substantial

---

[3] *See* Section 16(a)(2). Careful Program counsel often make sure to file a claim no later than three years from the date of administration of the vaccine at issue, even though the statute runs from the onset of symptoms (whether or not they are recognized at the time as such.).

[4] The billing log also reveals that counsel obtained and filed an additional set of records (pertaining to an eye doctor visit) on April 11, 2017. *See* Ex. 1 to Fees App. at 4.

aggravation").

Petitioner's fees request specifically requests that her counsel be compensated at a rate of $420 per hour for work performed in 2016-2017. Ex. 1 to Fees App. at 2. Additionally, Petitioner requests compensation at a rate of $250 per hour for work performed by Ms. Kristina E. Grigorian in 2016-2017. *Id.* Petitioner also requests that counsel's law clerks be compensated at a rate of $125 per hour for work performed in 2016-2017. *Id.* Pursuant to the General Order No. 9 statement, Petitioner maintains that she has not incurred any personal costs related to this matter. ECF No. 19-5. The fees request also includes costs incurred, representing medical record fees, postage, and a medical expert review by Dr. Steven Sykes. *See* Exs. 3-4 to Fees App.

Respondent reacted to the motion on January 2, 2018, contesting Petitioner's entitlement to a fee award in the entirety on reasonable basis grounds in light of the Federal Circuit decision in *Simmons v. Sec'y of Health & Human Servs.*, 875 F.3d 632 (Fed. Cir. 2017). *See* Response, filed Jan. 2, 2018 (ECF No. 20) ("Response"). He argued that Petitioner should be denied any fees award because the evidence submitted does not satisfy the Act's reasonable basis standard. *Id.* at 4 (citing *Everett v. Sec'y of Health & Human Servs.*, No 91-1115V, 1992 WL 35863, at *2 (Fed. Cl. Spec. Mstr. Feb. 7, 1992) ("To have a 'reasonable basis,' a claim must, at minimum, be supported by medical records or medical opinion.")). In addition, Respondent maintains that under *Simmons*, filing a claim on the eve of the statute of limitations period has "no bearing" on the reasonable basis analysis, and thus Petitioner cannot invoke the cut-off as an explanation for going forward with the claim. *Id.* Rather, the reasonable basis analysis must focus on "whether there is [objective] evidentiary support for the claim set forth in the petition, not whether counsel acted reasonable in filing [it]." *Id.* at 4.

Thereafter, on January 8, 2018, Petitioner filed a Reply, arguing that her claim had reasonable basis (up to the point of the claim's dismissal) based on a variety of arguments. *See* Reply, filed Jan. 8, 2018 (ECF No. 21) ("Reply").

In the Reply, Petitioner explains that she contacted counsel on November 10, 2016, by completing counsel's standard intake form (and later speaking with counsel by phone that same day). Reply at 2. Petitioner noted that she provided counsel with her immunization record and healthcare provider form seven days later (on November 17, 2016). *Id.* at 3. According to Petitioner, a reasonable basis existed based on this initial contact with counsel (including providing counsel her immunization record and completed healthcare form listing all relevant treating physicians, diagnoses, testing conducted, and ongoing treatment), and counsel's own experience with respect to Flu/GBS/CIDP cases. *Id.* at 3 (citing *Austin v. Sec'y of Health & Human Servs.*, No. 10-362V, 2013 WL 659574, at *11 (Fed. Cl. Spec. Mstr. Jan. 31, 2013) ("The fact that special masters have found in favor of vaccine causation in similar cases or a history of settlements in

particular types of cases may provide reasonable basis for filing a claim, even in the absence of a medical opinion or medical records supportive of vaccine causation.")). Petitioner also maintains that counsel acted expeditiously in immediately requesting Petitioner's medical records and subsequently filing them in February 2017. *Id.* at 4. Despite counsel's limited review of the case prior to filing, Petitioner concludes that reasonable basis existed based on counsel's overall course of action throughout the lifespan of the case. *Id.* at 4-5. Petitioner also points out that counsel agreed to a joint dismissal of the claim after an unsuccessful attempt to retain an expert to offer an opinion in support of the claim. *Id.* at 5.

Next, Petitioner argues that Respondent's reliance on *Simmons* is misplaced in light of the evidence she offered in support (including the intake form and the vaccination record). Reply at 5-6. Counsel promptly obtained records following the initial contact, and acted diligently in reviewing the case thereafter, noting that records did in fact indicate a possible link between her flu vaccination and a subsequent CIDP diagnosis (or flare). *Id.* (citing Ex. 6 at 2867). Overall, it appears that Petitioner interprets *Simmons* to conclude that "counsel may not use [solely] the impending statute of limitations deadline to establish a reasonable basis . . . ." *Id.* at 6 (citing *Simmons*, 875 F.3d at 636).

Finally, Petitioner contends that public policy supports an award of attorney fees and costs in this case. Reply at 10. The purpose of fees awards in Vaccine Program cases is in part to ensure access to competent counsel. *Id.* (citing *Austin*, 2013 WL 659574, at *18). According to Petitioner, competent counsel will agree to represent petitioners only with reassurance of adequate compensation for time expended. *Id.* In the present matter, Petitioner reiterates, her counsel diligently pursued the claim, and efficiently acted upon the claim's dismissal when it was apparent that counsel could not find an expert to support causation. *Id.*[5]

## Brief Summary of Relevant Medical Facts

At the outset, Petitioner filed this case seeking compensation for damages related to GBS and/or CIDP, which she alleged was caused by her receipt of a flu vaccine administered on November 20, 2013. *See* Petition at 1 (ECF No. 1) ("Pet."); Ex. 1 at 1; Ex. 2 at 35. She further alleged that a second set of vaccines, received on September 14, 2016, caused her to experience a CIDP flare that same fall. Pet. at 2 ¶¶ 10-11, 13; Ex. 1 at 1; Ex. 2 at 10.

However, the medical records filed in support suggest that Petitioner's adverse symptoms began (with diplopia) in late August 2013 – over one month prior to her receipt of the initial flu vaccination in November 2013. Ex. 2 at 40-41. Petitioner's treating neurologist also opined that

---
[5] Petitioner did not request additional compensation for counsel's work on the Reply.

her CIDP onset occurred pre-vaccination in October 2013. *See* Ex. 6 at 3790, 3800 (8/14/2014 and 2/5/2015 follow-up appointments for CIDP symptoms). Over the course of her treatment, Petitioner similarly acknowledged that her CIDP presented with diplopia around this time. Ex. 6 at 1094 (stating that diplopia "was her first presenting symptom of CIDP nearly 6 years ago").

Although it is clear from the records that Petitioner experienced additional neuropathic symptoms following the November 2013 vaccination, no treater ever opinioned that this dose of the flu vaccine caused any symptom she was experiencing at the outset. *See, e.g.*, Ex. 2 at 30 (1/6/2014 concern for spinal stenosis); Ex. 2 at 27 (3/14/2014 concern for multiple sclerosis); Ex. 4 at 1 (4/10/2014 impression included weakness and numbness following GI virus); Ex. 4 at 7-8 (4/17/2014 EMG and nerve conduction study showed "pure demyelinating polyneuropathy"); Ex. 6 at 6 (7/10/2014 diagnosis of CIDP and treatment with IVIG).

The record does reveal, however, that some of Petitioner's treaters considered her September 2016 vaccinations as playing a possible role in a subsequent CIDP flare. *See, e.g.*, Ex. 6 at 2860 (Petitioner presented on 9/17/2016 with "CIDP exacerbation due to possible UTI vs pneumonia injection"), 2866 (Petitioner evaluated on 9/18/2016 with complaints of "increased weakness beginning 2 days ago after a flu shot"), 2867 (Petitioner presented with "CIDP exacerbation due to possible UTI vs flu shot"), 2868 (Petitioner has "felt more fatigued with some fever and chills since receiving flu shot"), 2879 (Petitioner presented with "progressive worsening of weakness which she feels began after flu and pneumonia vaccinations last week"), 2889 (Petitioner presented on 9/17[,] 2 days after receiving a flu shot, with increased proximal and distal weakness"), 3037 (Petitioner "admitted for exacerbation following a recent flu shot vs UTI").

Similarly, the record also shows Petitioner reported to her treaters her own concern that the vaccinations she received had a relationship to her reoccurrence of symptoms. *See, e.g.*, Ex. 6 at 2909 ("[Petitioner] reports she is having increased weakness after having a flu shot"), 2911 (Petitioner "blames her recent vaccine of pneumonia and the flu for her symptoms"), 2902 (Petitioner "arrives . . . with CIDP flare up that she feels was initiated by her flu vaccine"), 3037 (Petitioner "reports getting a flu shot 3 days before admission and also being treated for a UTI"), 3903 (Petitioner "reports of having the recent exacerbation after [f]lu shot"), 3972 (Petitioner reports that she had received the "pneumonia shot" and her "arm swelled up, and her legs [had] gotten much weaker since"). However, there is no mention of a treater opinion differentiating her (alleged vaccine-related) flare from a natural CIDP course or alternate medical trigger (i.e., a UTI). *See, e.g.*, Ex. 6 at 953 (6/30/2016 treatment for CIDP flare pre-September 2016 vaccination), 1767 (8/16/2016 treatment for CIDP flare and UTI pre-September 2016 vaccination).

The remainder of Petitioner's records reveal treatment for various aliments (including eye problems, knee pain and swelling, as well as bloodwork). *See generally* Exs. 7-8. These records do not mention any alleged vaccine-related injury.

5

## ANALYSIS

### I.  Reasonable Basis Standard

#### A.  Relevant Legal Standards

I have in prior decisions set forth at length the criteria to be applied when determining if a claim possessed "reasonable basis"[6] sufficient for a fees award. *See, e.g.*, *Allicock v. Sec'y of Health & Human Servs.*, No. 15-485V, 2016 WL 3571906, at *4-5 (Fed. Cl. Spec. Mstr. May 26, 2016), *aff'd on other grounds*, 128 Fed. Cl. 724 (2016); *Gonzalez v. Sec'y of Health & Human Servs.*, No. 14-1072V, 2015 WL 10435023, at *5-6 (Fed. Cl. Spec. Mstr. Nov. 10, 2015). In short, a petitioner can receive a fees award even if his claim fails, but to do so he must demonstrate the claim's reasonable basis through some objective evidentiary showing and in light of the "totality of the circumstances," including all facts relevant to the to the case, as well as the evidence actually supporting the claim itself. *See Chuisano v. Sec'y of Health & Human Servs.*, 116 Fed. Cl. 276, 286 (2014) (citing *McKellar v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 303, 303 (2011)). The nature and extent of an attorney's investigation into the claim's underpinnings, both before and after filing, is a relevant consideration. *See Cortez v. Sec'y of Health & Human Servs.*, No. 09-176V, 2014 WL 1604002, at *6 (Fed. Cl. Spec. Mstr. Mar. 26, 2014); *Di Roma v. Sec'y of Health & Human Servs.*, No. 90–3277V, 1993 WL 496981, at *2 (Fed. Cl. Spec. Mstr. Nov. 18, 1993) (citing *Lamb v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 255, 258–59 (1991)). Program attorneys are expected to conduct a reasonable pre-filing investigation—including an evaluation of the factual basis for the claim at minimum. *See Allicock*, 2016 WL 3571906, at *4; *Turner v. Sec'y of Health & Human Servs.*, No. 99-544V, 2007 WL 4410030, at *7 (Fed. Cl. Spec. Mstr. Nov. 30, 2007) ("[a] reasonable pre-filing inquiry involves an investigation of the factual basis for a Program claim *or* the medical support for a vaccine petition") (emphasis added)).

The Court of Federal Claims recently provided further illumination as to the standards that should be used to evaluate whether the totality of the circumstances warrant a finding that reasonable basis existed. *Cottingham v. Sec'y of Health & Human Servs.,* No. 15-1291V, 2017 WL 4546579, at *10 (Fed. Cl. Oct. 12, 2017). As Judge Williams therein stated, a special master should consider "the novelty of the vaccine, scientific understanding of the vaccine and its potential consequences, the availability of experts and medical literature, and the time frame counsel has to investigate and prepare the claim." *Id*. at *5. An impending statute of limitations deadline may also play a role in a reasonable basis determination as well. *Id*. at *10.

---

[6] Although good faith is one of the two criteria that an unsuccessful petitioner requesting a fees award must satisfy, it is an easily-met one – and Respondent does not appear to question it in this case. *Grice v. Sec'y of Health & Human Servs.*, 36 Fed. Cl. 114, 121 (1996) (in the absence of evidence of bad faith, special master was justified in presuming the existence of good faith).

The even more recent Federal Circuit decision in *Simmons*, however, removes from consideration the statute of limitations factor under the "totality of the circumstances" analysis. *See Simmons*, 875 F.3d at 636. In *Simmons*, the Court held that a pending statute of limitations deadline could not by itself constitute grounds for reasonable basis, while also holding that its pending expiration "has no bearing on whether there is a reasonable factual basis for the claim . . . ." *Id.* Thus, as an even more recent opinion from the Court of Federal Claims further elaborated, *Simmons* "forbade altogether, the consideration of statutory limitations deadlines—and *all* conduct of counsel—in determining whether there . . . [exists] a reasonable basis for a claim." *Amankwaa v. Sec'y of Health & Human Servs.*, No. 17-036V, slip. op. at 9 (Fed Cl. June 4, 2018) (emphasis added). In so stating, the Court interpreted *Simmons* to be understood to mean "that special masters must not consider subjective factors in determining whether a claim has reasonable basis[,]" and should "limit [their] review to the claim alleged in the petition . . . based on the materials submitted." *Id.* at 9-10 (quoting *Santacroce v. Sec'y of Health & Human Servs.*, No. 15-555V, 2018 WL 405121, at *7 (Fed. Cl. Spec. Mstr. Jan. 5, 2018)).

### B. Petitioner's Claim Had Sufficient Reasonable Basis for a Fees Award

As *Simmons* (and the more recent *Amankwaa* decision) underscore, the fact that an attorney must act in the face of a looming statute of limitations expiration does not constitute objective evidence supporting a claim's reasonable basis. In the past, special masters have excused Program lawyers from acting expeditiously to file claims that later are revealed to lack the objective substantiation to be potentially viable - but they may do so no longer. Accordingly, my reasonable basis analysis is limited to the evidence supporting the claim itself, and what evidence supports it (although that analysis can take into account factors such as the novelty of the claim, the scientific basis for the claim, the availability of experts and medical literature, and the time frame counsel has to investigate and prepare the claim). *See generally Amankwaa*, slip op. (Fed. Cl. June 4, 2018). Petitioner cannot invoke the fact that her attorney was compelled to file the case at the limitations cut-off to excuse his incomplete review of the case's objective basis at that time.

Counsel nevertheless claims that there was sufficient objective evidence in support of Petitioner's claim. First, Mr. Pop maintains that he possessed Petitioner's vaccination record and self-described health history (including petitioner's own recounting of her appointments with physicians and treatments received) prior to the filing of the case (which, in his view should be considered objective support). However, only Petitioner's vaccination record constitutes objective evidence—and here it shows only that Petitioner received the vaccination at issue. It is well established in the Program that Petitioner's own statements are not objective in nature. *See, e.g.*, *Chuisano*, 116 Fed. Cl. at 291 (petitioner's affidavit detailing "subjective belief" of vaccine injury

7

did not constitute objective evidence); *Foster v. Sec'y of Health & Human Servs.*, No. 16-1714V, 2018 WL 774090, at *3 (Fed. Cl. Spec. Mstr. Jan. 2, 2018) (finding reasonable basis existed where counsel relied *not* on statements made by the petitioner, but on "actual objective record proof") (emphasis added).

Petitioner next maintains that the medical records show objective evidence supportive of her claim. Reply at 5. However, those records reveal some facial deficiencies with regard to *portions* of the claim. As I noted above, the medical records established that Petitioner was experiencing CIDP symptoms prior to her initial flu vaccination in November 2013 (e.g., Ex. 2 at 40; Ex. 6 at 3790, 3800; Ex. 6 at 1094), and none of the records filed support a causal link between the initial vaccination and the onset of Petitioner's CIDP symptoms in late 2013. Accordingly, if the sole allegation in this Petition were that the November 2013 flu vaccine *caused* her CIDP, the claim would plainly lack reasonable basis, as the record contradicts such an allegation.

However, there is more to the Petition than the claim involving the 2013 vaccination. The Petition *also* includes a significant aggravation claim based on two vaccines received in September 2016. *See* Petition at 2 (alleging a "severe fla[re-]up of her CIDP symptoms"). For this component of the claim, the record is more favorable to Petitioner. At least one of Petitioner's treaters considered a possible vaccine-induced flare of CIDP (e.g., Ex. 6 at 2860, 2866, 2867, 2889, 3037) with regard to her September 2016 vaccinations. Admittedly, it does also appear that some treater statements were recorded as Petitioner's own recollection of her injuries, rather than a treater formally confirming or proposing a causal link between the alleging injury and any vaccine she received (e.g., Ex. 6 at 2879, 2902, 2909, 2911, 3037, 3903). In addition, the record reveals no treater statements distinguishing Petitioner's symptoms from other ailments (i.e. pre-existing CIDP and UTI) within her documented health course (e.g., Ex. 6 at 953, 1767). But there *is* objective support for the claim that the vaccines received in September 2016 could have exacerbated Petitioner's CIDP - and even if such evidence looks weak in hindsight (especially given the claim's dismissal), it is enough to conclude that the case had *some* objective reasonable basis.

Accordingly, based on my review of the case record and counsel's representation as set forth in the billing log, I conclude this matter had just enough reasonable basis to be viable—up to the time counsel sought dismissal of the claim (including time spent completing tasks relevant to winding down the case). The fact that part of the Petition clearly was not viable at the outset does not mean, for reasonable basis purposes, that the *entire* Petition lacked objective support. Vaccine Program litigants routinely jettison portions of their case, or alternatively-pled causes of action, that the evidence does not support. So doing does not necessarily doom the remaining claim or claims. The same result is appropriate here when evaluating reasonable basis.

My analysis is not complete, however. I must determine, based on the totality of the circumstances and the evidentiary showing, if Petitioner should receive a full award of attorney's fees through January 2018. Well-reasoned decisions have noted that even cases that begin with reasonable basis can lose it over time, once more evidence comes in that reveals a claim's weaknesses. *See, e.g., Pannick*, 2016 WL 8376894, at *2. I have ruled that reasonable basis ceased to exist for certain claims that initially had it for this very reason. *See, e.g., Curran*, 2017 WL 1718791; *see also Fieselman v. Sec'y of Health & Human Servs.*, No. 17-170V, 2017 WL 5398625 (Fed. Cl. Spec. Mstr. Sept. 14, 2017); *Butler v. Sec'y of Health & Human Servs.*, No. 16-1620V, 2017 WL 3811134 (Fed. Cl. Spec. Mstr. Aug. 3, 2017). Upon review of counsel's billing log, I find that reasonable basis existed through the time the parties agreed to jointly dismiss the case. As mentioned above, Petitioner's claim relating to her November 2013 vaccinations lacked reasonable basis (given the lack of causal support for such a claim in the medical record). However, Petitioner's significant aggravation claim was supported by those same records. Thus, counsel's prosecution of the significant aggravation claim was proper. He diligently worked to determine the claim's overall viability (via expert opinion) and performed only tasks associated with winding down the matter following an unsuccessful attempt to locate an expert who could favorably opine as to causation.

Had the parties not voluntarily dismissed the matter, this claim likely would not have been successful considering the relatively weak causal support in the record relating Petitioner's vaccinations to a subsequent CIDP flare. But it has long been understood that the *success* of a claim is not determinative of the claim's reasonable basis, an inquiry which considers whether some objective proof exists to support it. *See Livingston v. Sec'y of Health & Human Servs.*, No. 12-268V, 2015 WL 4397705, at *6 (Fed. Cl. Spec. Mstr. June 26, 2015) ("[a]n assessment of reasonable basis looks not to the likelihood of success but more to the feasibility of the claim." (internal quotation marks omitted)). Here, that test is satisfied, and therefore the case had sufficient reasonable basis through its dismissal for a fees award.

## II.   Calculation of Fees Award

Determining the appropriate amount of a fees award is a two-part process. The first part involves application of the lodestar method – "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1347-48 (Fed. Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The second part involves adjusting the lodestar calculation up or down. *Avera*, 515 F.3d at 1348.

An attorney's reasonable hourly rate is determined by the "forum rule," which bases the proper hourly rate on the forum in which the relevant court sits (Washington, DC, for Vaccine Act cases), *except* where an attorney's work was not performed in the forum and there is a substantial difference in rates (the *Davis* exception). *Avera,* 515 F.3d at 1348 (Fed. Cir. 2008, citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency*, 169 F.3d 755, 758 (D.C. Cir. 1999)). As the Federal Circuit stated in *Avera*, inclusion of the *Davis* exception ensures against a "windfall" – meaning paying a lawyer in a rural or less expensive locale more than she would otherwise earn, simply because she is litigating a case in a court of national jurisdiction. *Avera,* 515 F.3d at 1349.

After the hourly rate is determined, the reasonableness of the total hours expended must be determined. *Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 205-06 (2009). This inquiry mandates consideration of the work performed on the matter, the skill and experience of the attorneys involved, and whether any waste or duplication of effort is evident. *Hensley v. Eckerhart*, 461 U.S. 424, 437(1983).

With all of the above in mind, I turn Petitioner's fee request. Petitioner asks that Mr. Pop and his associates who worked on this matter be reimbursed at varying rates for work performed from 2016-2017, as detailed above ($420 per hour for Mr. Pop for work completed in 2016-2017; $250 per hour for Ms. Grigorian for work completed in 2016-2017; and $125 per hour for work completed by law clerks in 2016-2017, respectively). Mr. Pop's firm, located in Beverly Hills, California, has repeatedly been found to be "in-forum" and therefore he is entitled to the forum rates established in *McCulloch. See McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015);[7] *see, e.g., Morrison v. Sec'y of Health & Human Servs.*, No. 16-526V, 2017 WL 6889720, at *1 (Fed. Cl. Spec. Mstr. Nov. 28, 2017); *Mungin v. Sec'y of Health & Human Servs.*, No. 16-968V, 2017 WL 6892086, at *1 (Fed. Cl. Spec. Mstr. Nov. 14, 2017); *Pentcholov v. Sec'y of Health & Human Servs.*, No. 14-414V, 2016 WL 3197389 (Fed. Cl. Spec. Mstr. Apr. 29, 2016). The rates requested herein are consistent with my prior decisions and will be awarded in full.

In light of my reasonable basis determination, I will compensate counsel in full for his work on this matter. The majority of the hours expended by counsel and his staff (32.8 in total) appear to be reasonable in light of the facts discussed above. I do not find any particular billing entries to be objectionable, nor has Respondent identified any as such. Therefore the requested hours will be awarded without reduction.

---

[7] The *McCulloch* forum rate ranges have been compiled into a list and posted to the Vaccine Claims section of the United States Court of Federal Claim website. The forum hourly rate fee schedule can be accessed at http://www.uscfc.uscourts.gov/vaccine-programoffice-special-masters ("OSM Hourly Rate Chart").

Petitioner also requests $1,248.48 in costs associated with this matter (representing the filing fee, medical records requests, and postage costs). *See* Ex. 2 to Fees App. at 2. Petitioner's requested costs also include reimbursement for an expert review from Dr. Steven Sykes at a rate $500.00 per hour (totaling $500.00 for one hour of work). *See* Ex. 3 to Fees App. at 2. This appears to be one of Dr. Sykes's first Program cases,[8] and I must balance his level of expertise against his lack of experience in the Vaccine Program. The requested rate of $500 per hour is at the very top end of hourly rates awarded to highly qualified experts. *See, e.g., Rosof v. Sec'y of Health & Human Servs.*, No. 14-766, 2017 WL 1649802, at *4 (Fed. Cl. Spec. Mstr. Mar. 31, 2017) (noting that awarding $500 per hour for an expert in the Program is very rare). Based on a review of Dr. Sykes CV, I find that he is sufficiently qualified to offer an opinion in the Program. However, Petitioner has not provided persuasive evidence that Dr. Sykes should receive a rate of $500 per hour. Indeed, seasoned Vaccine Program experts are routinely compensated at a lower rate. *See, e.g., Carda v. Sec'y of Health & Human Servs.*, No. 14-191, 2017 WL 1709707, at *2 (Fed. Cl. Spec. Mstr. Mar. 23, 2017). I will therefore reduce Dr. Sykes requested hourly rate to $400 per hour, commensurate with other similarly-experienced experts. *See, e.g., L.M. v. Sec'y of Health & Human Servs.*, No. 14-714V, 2017 WL 5382907, at *4 (Fed. Cl. Spec. Mstr. Sept. 29, 2017) (reducing rate of two-time Program participant expert from $500 to $350 per hour); *DePena v. Sec'y of Health & Human Servs.*, No. 13-675V, 2017 WL 1476240, at *5 (Fed. Cl. Spec. Mstr. Mar. 30, 2017) (reducing rate of first-time Program participant expert from $500 to $325 per hour). This amounts to a total award of $400.00 for Dr. Sykes's one hour of work (representing a total costs reduction of $100.00).

I otherwise do not find any particular billing entries to be objectionable, nor has Respondent identified any as such. Furthermore, the remainder of Petitioner's requested costs appear to be reasonable and will be awarded in full.

## CONCLUSION

For the aforementioned reasons, I award a total of **$9,302.98** (representing $8,154.50 in attorney fees and $1,148.48 in costs) as a lump sum in the form of a check jointly payable to Petitioner and Petitioner's counsel, Jeffrey Pop, Esq. In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the Court is directed to enter judgment herewith.[9]

---

[8] Upon review of the relevant case law, it appears that Dr. Sykes has offered an opinion in one other Program case. *See Frost v. Sec'y of Health & Human Servs.*, No. 16-1671, 2017 WL 6334788 (Fed. Cl. Spec. Mstr. Nov. 16, 2017). In *Frost*, the special master assigned to the case did not analyze Dr. Sykes's hourly rate.

[9] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the Parties' joint filing of notice renouncing the right to seek review.

**IT IS SO ORDERED.**

/s/ Brian H. Corcoran
Brian H. Corcoran
Special Master